UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

CASE NO. 3:24-cv-05916-JNW

ORDER REVERSING AND
REMANDING COMMISSIONER'S
DECISION

## 1.  INTRODUCTION

Plaintiff Lisa H. seeks review of the denial of her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. She contends that the administrative law judge ("ALJ") erred in evaluating the medical opinions of Drs. Melinda C. Losee, Ph.D., Andrew Weir, M.D., and David Morgan, Ph.D. She also asserts that the ALJ erred by discrediting her testimony. For the reasons below, the Court GRANTS the Petition for Judicial Review and REVERSES AND REMANDS Commissioner's denial of benefits.

## 2.  LEGAL STANDARD

"Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence." *Elizabeth G. v. Comm'r of Soc. Sec.*, Case No. C24-2025-MLP, 2025 WL 1519230, at *1 (W.D. Wash. May 27, 2025) (citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation modified)). "In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings." *Id.*

The ALJ is responsible for resolving ambiguities in the medical evidence, and if the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Smartt*, 53 F.4th at 494; *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ."). Reversal is warranted only if the ALJ erred, and the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial

gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

### 3.   BACKGROUND

Plaintiff first applied for disability insurance benefits and supplemental social security income in September 2019, alleging disability since May 15, 2019. AR1338. After her applications were denied, Plaintiff requested a hearing, which occurred in November 2021. *Id.* The ALJ issued an unfavorable decision on April 4, 2022, which Plaintiff appealed to the U.S. District Court for the Western District of Washington. *Id.* U.S. Magistrate Judge Grady J. Leupold reversed and remanded, finding the ALJ had erred in discrediting the medical opinions of Dr. Melinda C. Losee, Ph.D. *Lisa H. v. Comm'r of Soc. Sec.*, No. 3:22-cv-05911-GJL, Dkt. No. 20 at 5–8. The court also directed the ALJ to reconsider the weight afforded to Plaintiff's testimony on remand. *Id.* at 8.

In June 2024, the ALJ heard Plaintiff's case again and subsequently denied benefits. At Step 3, the ALJ found that Plaintiff has severe impairments of "depressive/ bipolar disorder and anxiety disorder (includ[ing] panic disorder)." AR1341. At Step 4, the ALJ found that Plaintiff does not have "an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments." AR1342. Then, at Step 5, the ALJ found that Plaintiff has the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple tasks with no collaborative tasks with coworkers. She can have no more than occasional interaction with the public in a routine work environment. She cannot work in a job requiring a production rate pace, such as assembly line work or work with hourly production quotas.

AR1344.

Based in this RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" and that she was therefore not disabled. AR1356. Plaintiff again seeks judicial review.

## 4.   DISCUSSION

Plaintiff seeks review of the ALJ's decision. She argues that the ALJ erred by: (1) improperly discrediting the opinions of Dr. Losee, Dr. Andrew Weir, M.D., and Dr. David Morgan, Ph.D.; and (2) improperly evaluating her testimony. Plaintiff asserts that these errors caused the ALJ to inaccurately assess her RFC.

### 4.1   Legal standard for weighing medical opinions.

"For nearly 40 years, [courts] have weighed medical opinions based on the extent of the doctor's relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The opinions of treating physicians are "entitled to substantial weight," and courts generally give them more weight than any other medical opinions in the record. *Id.* (citation modified). Below treating physicians,

"[i]n the middle tier[,] are doctors who examine the claimant but do not have an ongoing relationship with her." *Id.* "To reject either a treating or an examining physician's opinion, an ALJ must provide 'clear and convincing reasons,'" that are "supported by substantial evidence." *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)).

"The lowest-weighted tier comprises 'physicians who only review the record.'" *Id.* (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).

For applications filed on or after March 27, 2017, the Administration has directed ALJs to not defer to medical opinions from treating or examining sources. *See* 20 C.F.R. § 416.927(c). The Ninth Circuit recently held that these "revised social security regulations are clearly irreconcilable with [its] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods*, 32 F.4th at 792. Therefore, for applications filed after March 27, 2017, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

### 4.1.1    The ALJ erred in weighing Dr. Melinda Losee's opinions.

Dr. Melinda Losee completed a medical opinion on Plaintiff's mental workplace limitations in November 2021, as requested by the State of Washington

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 5

Division of Disability Determination Services. AR1064–68, 1074–77. Dr. Losee reviewed Plaintiff's medical records from January–July 2020, interviewed Plaintiff, and performed a mental status examination. AR1062. During the mental status examination, Dr. Losee found that Plaintiff was experiencing a manic episode, "despite reported regular use of psychotropic medications." AR1067. While Dr. Losee made findings related to the manic episode Plaintiff was experiencing during the examination, she also made broader findings. For instance, she concluded that Plaintiff "suffer[s] from recurrent manic and depressive episodes that are severe at times and significantly impair her ability to maintain stable employment, housing, relationships, etc." *Id*. Based on observing Plaintiff's manic episode, Dr. Losee found that Plaintiff's "ability to complete work-related tasks is significantly affected by her bipolar episodes which preclude her from maintaining sustained efforts." *Id*. Likewise, she found that Plaintiff was "not currently capable of understanding, remembering, and carrying out simple or detailed instructions," or "capable of making work-related decisions." *Id*. She also concluded that Plaintiff's bipolar episodes "affect her ability to complete daily activities (e.g., completing chores, staying on task, remembering to shower) and her social functioning (e.g., too intense, irritable, and impulsive during mania, and emotionally withdrawn and isolating during depression.)." *Id*.

The ALJ discounted Dr. Losee's opinions, first by stating that they are inconsistent with the longitudinal record. AR1351. The ALJ explains that Plaintiff's "presentation was unremarkable in most records," and that most providers "typically noted that [the Plaintiff] presented as pleasant and cooperative, with no

significant abnormality in speech, behavior, concentration, psychomotor activity, affect, thought processes, or thought content." AR1352. But the fact that Plaintiff appeared unremarkable in other records fails to acknowledge the nature of Bipolar Disorder—a condition that causes recurring episodes of mania and depression. The Ninth Circuit has recognized that some conditions, including mental health conditions like Bipolar Disorder, cause symptoms that "wax and wane," and that ALJs must consider this reality when crediting testimony. *Nielson v. Colvin*, No. 23-35619, 2024 WL 5200174, at *1 (9th Cir. Dec. 23, 2024) (ALJ improperly singled out periods of improvement to discredit doctor's opinion, even though there was also "a significant volume of medical evidence corroborating [the doctor's] opinions."); *cf. Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.").

The Commissioner relies on *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), for the proposition that evidence of successful treatment can undermine a disability claim even when symptoms wax and wane. But Wellington involved symptoms that fluctuated between periods of wellness and mild symptoms—not, as here, cycling between relative stability and full manic episodes lasting days at a time. Plaintiff testified she is manic about half of each month. AR57. That is not the gradual waxing and waning at issue in *Wellington*; it is an episodic condition that, by its nature, presents differently on different days.

Moreover, an ALJ may not simply list normal findings throughout the record to discount a doctor's diagnoses and opinions when there are also abnormal findings

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 7

in the record; that tactic is insufficient because it fails to *explain why* the normal findings are more significant than the abnormal ones. *Alexander M. v. Comm'r of Soc. Sec.*, Case No. C21-254-BAT, 2021 WL 3758145, at *3 (W.D. Wash. Aug. 25, 2021) (citing *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)).

Here, the ALJ concluded that Plaintiff has severe impairments of "depressive/ bipolar disorder and anxiety disorder (include[ing] panic disorder)." AR1341. He also found that Dr. Losee observed Plaintiff during a manic episode and believes that her opinion is consistent with her examination findings. AR1351. Thus, the ALJ accepts that Plaintiff has manic episodes and accepts Dr. Losee's description of their debilitating effects. Nevertheless, the ALJ discredited Dr. Losee's opinions because Plaintiff appears normal and states that she is doing well in other records. This reasoning ignores the waxing and waning symptoms of Bipolar Disorder to discredit the medical opinion of an examining doctor. Indeed, as Magistrate Judge Leupold already found, there is evidence in the medical record supporting Dr. Losee's opinions.

The ALJ attempts to distinguish the normal findings upon which he relies from the abnormal findings in the record by explaining that: (1) "the treatment notes showing a normal or mostly normal mental status presentation include notes contemporaneous to Dr. Losee's examination [on October 19, 2021]"; and (2) "[n]otes around the same time as Dr. Losee . . . show that the claimant essentially denied mental symptoms or stated that her symptoms were controlled with medication." AR1352 (citing records). But on review, the records cited as being contemporaneous to Dr. Losee's examination are not. *See e.g.*, AR528–33 (includes cited 2F/26–27)

(date of service is October 3, 2019); AR624 (4F/16) (September 2019 note); AR626 (4F/18) (September 2019 note); AR630 (4F/22) (September 2019 note); AR636 (4F/28) (October 2019 note); AR638 (4F/30) (October 2019 note); AR 640 (4F/32) (October 2019 note); AR665 (4F/57) (part of an evaluation from August 2019); AR686–89 (5F/8–11) (2019 notes); AR737–38 (8F/17–18) (November 2019 notes); AR2001–02 (22F/4–5) (December 2019 notes).

Some of the records cited earlier in the ALJ's discussion of Dr. Losee's opinion *are* closer in time to Dr. Losee's examination. *See, e.g.*, AR528–33 (includes cited 2F/26–27) (AR1782 (20F/25) (telephonic session on November 8, 2021); AR 1785 (20F/28) (telephonic session on November 30, 2021); AR2092 (23F/78) (telephonic session on December 28, 2021). But the ALJ does not explain how normal findings between Plaintiff's manic episodes discredit medical opinions about the severity and impact of her manic episodes—especially when it is undisputed that Plaintiff suffers manic episodes due to her Bipolar Disorder.

Second, the ALJ found that the claimant's activities are inconsistent with the extreme limitations assessed by Dr. Losee. But Magistrate Judge Leupold found that Plaintiffs' daily activities do not contradict Dr. Losee's opinion, holding, "The ALJ should not have relied upon cherry-picked daily activities, that may have occurred during a non-manic period, as a global rejection of Dr. Losee's opinions." *Lisa H.*, No. 3:22-cv-05911-GJL, Dkt. No. 20 at 6. The ALJ committed the same error here.

Finally, the ALJ discredited Dr. Losee's opinions by stating that she "had little understanding of the overall diagnostic picture" because she only saw Plaintiff

one time and because she "reviewed few, if any, treatment notes or other records." AR1351. This reasoning is illogical and unsupported. The ALJ discredits Dr. Losee because she only saw Plaintiff once. But the Commissioner cites no precedent to support discrediting an examining physician in favor of records-review physicians on the basis that the examining physician only saw the plaintiff one time. And such an argument would be contrary to Ninth Circuit precedent confirming that examining physicians should generally receive more deference than non-examining physicians. *See Woods*, 32 F.4th at 789. Moreover, the finding that Dr. Losee reviewed "few, if any" treatment records is factually incorrect; Dr. Losee reviewed seven months' worth of records in addition to performing her examination. AR1064.

Accordingly, substantial evidence does not support the ALJ's reasons for discrediting Dr. Losee's opinions.

### 4.1.2    The ALJ erred in weighing Dr. Andrew Weir's opinions.

Substantial evidence does not support the ALJ's decision to discount Dr. Andrew Weir's opinion. Dr. Weir performed a consultative examination of Plaintiff in November 2021 for the "chief complaint" of arthritis. AR1070. He concluded that—as a functional restriction— Plaintiff cannot stand or walk for more than six hours a day and can only stand or walk for two hours at a time without interruption. AR1073, 1080. He also found that Plaintiff was "[r]estricted to [lifting] 20 pounds occasionally and 10 pounds frequently." AR1073.

The ALJ rejected these limitations for several reasons. First, the ALJ asserts that Dr. Weir failed to "point to specific findings or . . . other rationale to

substantiate the limitations." AR1342. But Dr. Weir's report includes information that supports his findings. It notes that Plaintiff has "[a]rthritic pain in her right hip and right knee [that] limits her ability to stand for prolonged periods of time." AR1070. It also notes that she has difficulty with stairs, that she had unsuccessfully attempted physical therapy, and that she was prescribed Meloxicam for her arthritic pain. *Id.* Dr. Weir also reviewed medical records showing imaging with arthritic changes in the knee and hip; the record also showed an objective finding for positive joint pain and inability to fully extend or bend the knee due to discomfort. AR769. And ultimately, Dr. Weir diagnosed Plaintiff with mild osteoarthritis. AR1073. Substantial evidence thus does not support the ALJ's conclusion that Dr. Weir failed to provide any support for his opinions.

Second, the ALJ asserts that Dr. Weir's "normal examination findings, which include[e] normal gait, and normal strength and range of motion in all areas," are inconsistent with the found limitations. AR1342. But these findings are not contradictory. That Plaintiff has a normal gait, strength, and range of motion during an examination does not mean that she can walk or stand for more than six hours or that she can regularly lift more than 20 pounds given her osteoarthritis—especially when she reports difficulty standing for long periods of time and is treating her osteoarthritis with prescribed medication.

Third, the ALJ found that Dr. Weir's opinions are inconsistent with the longitudinal treatment record. *Id.* But as the ALJ notes, "[i]maging from 2019 showed mild to moderate arthritic changes in the claimant's knee and hip." AR1341. Plaintiff also cites medical records and findings consistent with Dr. Weir's opinions.

*See* AR700, 708, 714, 768–69. Given the supportive record and the episodic nature of Plaintiff's impairment, the ALJ's analysis was insufficient. *See Lisa H.*, Case No. 3:22-cv-05911-GJL, Dkt. No. 20 at 7 (citing *Reddick*, 157 F.3d at 725)).

Fourth, the ALJ found that Dr. Weir's opinions are inconsistent with Plaintiff's "allegations in her disability reports and her most recent hearing testimony, which reflect no mention of significant physical symptoms or limitations." AR1342. While Plaintiff did not mention physical limitations in her most recent hearing testimony, she has stated physical limitations in disability reports. *See* AR410 (2019 third-party function report noting a need to stop and rest during walks); AR432 (2020 function report noting inability to walk more than eight blocks before resting for 20 minutes); AR1722 (2022 function report noting inability to walk more than six blocks without "about [a] 10–15 minute rest"). Thus, the ALJ's finding that the allegations in Plaintiff's disability reports "reflect no mention of significant physical symptoms or limitations" that would support Dr. Weir's opinions is not supported by substantial evidence.

Fifth, the ALJ states that Dr. Weir's opinion is "inconsistent with the state agency consultants' opinions." AR1342. But because these consultants were not examining physicians, this reason cannot provide the sole basis to discount Dr. Weir's opinions, as a matter of law. *See Woods*, 32 F.4th at 789 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." (quoting *Lester*, 81 F.3d at 831)).

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 12

Finally, Plaintiff argues that the ALJ failed to consider Dr. Weir's opinion that Plaintiff can only stand and walk for two hours at one time without interruption. Dkt. No. 13 at 14; AR1080. Plaintiff is correct. The ALJ's discussion of Dr. Weir's opinion addresses the lifting limitation but says nothing about the standing/walking limitation. AR1342. This failure to address a portion of Dr. Weir's opinion constitutes legal error. *See Nadon v. Saul*, 851 F. App'x 24, 26 (9th Cir. 2021) ("If the ALJ ignores a medical opinion, we review that omission for harmless error."). This error was not harmless, as the RFC found no physical limitations, but all three jobs identified at Step Five require standing or walking for most of the workday. AR1353–54 (listing janitor, kitchen helper, and hand packager). The vocational expert was never asked whether those jobs would remain available with a two-hour standing/walking limitation.

Accordingly, without further explanation from the ALJ, substantial evidence does not support his decision to discredit Dr. Weir's opinions. *See Reddick*, 157 F.3d at 725 (The ALJ must "set forth [their] own interpretations and explain why they, rather than the doctors' [interpretations] are correct.").

## 4.2    The ALJ erred in weighing Dr. David Morgan's opinions.

Next, Plaintiff challenges the ALJ decision to discredit Dr. David Morgan, Ph.D.'s opinions. After performing a consultative, psychological examination on behalf of the State of Washington in 2019, Dr. Morgan found that Plaintiff suffers from moderate depression and moderate to marked anxiety on a daily basis. AR499. He diagnosed her with "Major Depressive Disorder, Recurrent Episode, Moderate

and Generalized Anxiety Disorder" and found that these diagnoses impact her ability to work. *Id.* For example, Dr. Weir concluded that because of these diagnoses, Plaintiff has moderate limitations in understanding and remembering instructions, marked limitations in adapting to changes in a routine work setting, and moderate limitations in her ability to ask simple questions and request assistance. AR500. After listing many similar limitations, he rated the "overall severity" of Plaintiffs combined limitations based on her diagnoses as "moderate." *Id.*

The ALJ discounted Dr. Morgan's testimony for several reasons. First, he concluded that Dr. Morgan had a limited understanding of the medical record. That finding is not supported by substantial evidence because Dr. Morgan states that he reviewed Plaintiffs' "DSHS records," AR498, and because the ALJ acknowledges that he does not know which records Dr. Morgan reviewed, AR1352.

Second, the ALJ discounted Dr. Morgan's opinion as "generally inconsistent with the longitudinal record, as discussed above at finding #5." AR1352. But the portion of the opinion to which the ALJ refers is eight pages long, and the ALJ fails to cite a contradiction between the record and Dr. Morgan's opinions.

Third, the ALJ found that Dr. Morgan's report contradicts itself because "his examination shows that he found that the claimant had no deficits in concentration, memory, fund of knowledge, thought processes, or perception" and because Plaintiff "presented as cooperative with normal speech" during the examination. AR1352. But the ALJ disregards the portions of the mental status examination that support Dr. Morgan's findings. For instance, Dr. Morgan notes that Plaintiff's appearance

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 14

during the mental status examination was unkempt and that she had "inappropriate dress." AR501. Moreover, he charted that Plaintiff's "[m]ood" was "[a]nxious" during the examination. Additionally, Dr. Morgan conducted a clinical interview and described Plaintiff's symptoms affecting her ability to work. AR499. He noted that her description of her "manic symptoms appears to be . . . accounted for by chronic anxiety." *Id.* He also charted her depression symptoms, including suicidal thinking, fatigue, lack of motivation, and hopelessness. *Id.* Again, the ALJ may not simply list normal findings to discount a doctor's diagnoses and opinions; instead, they must explain why the normal findings are more significant than the abnormal ones, in light of the plaintiff's diagnosis. *Alexander M.*, 2021 WL 3758145, at *3 (citing *Reddick*, 157 F.3d at 725).

### 4.3    The ALJ's errors require reversal and remand.

The ALJ erred in evaluating Dr. Losee's, Dr. Weir's and Dr. Morgan's opinions for the reasons above. None of these errors were harmless because if the ALJ credits any of these doctors' opinions, that decision will impact the ALJ's RFC analysis.

In general, courts should remand social security cases when additional proceedings can remedy the defects in the Commissioner's decision. *Garrison*, 759 F.3d at 1019. However, in appropriate circumstances, "courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Id.* Typically, courts only exercise this power "when it is clear from the record that a claimant is entitled to benefits." *Id.* In the Ninth Circuit, courts

remand with instructions to award benefits "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the . . . [record] testimony were [properly] credited." *Id.* (quoting *Varney v. Sec. of Health & Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)) (applying "credit-as-true" rule); *see also id.* at 1020 (citing *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989) (applying "credit-as-true" rule to medical opinion testimony). Here, it is unclear from the record that an award of benefits is required. Accordingly, remand is appropriate.

### 4.4    The Court directs the ALJ to reconsider Plaintiff's testimony on remand.

Plaintiff asserts that the ALJ erred by discounting her testimony about her symptoms and limitations. Because reconsideration of the medical opinion evidence may impact the ALJ's assessment of Plaintiff's credibility, the ALJ is further directed to reconsider this evidence on remand.

## 5.  CONCLUSION

Accordingly, the Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this Order. On remand, the ALJ shall reevaluate Dr. Losee's, Dr. Weir's, and Dr. Morgan's opinions, reevaluate Plaintiff's testimony, reconsider at Step Three whether Plaintiff's impairments meet or equal a listed impairment, develop the record and redetermine RFC as needed, and

proceed to Step Five as necessary. The Clerk is DIRECTED to enter judgment for Plaintiff and close this case.

Dated this 2nd day of February, 2026.

Jamal N. Whitehead
United States District Judge